IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PEGGY CADWELL,**

       **Plaintiff,**

v.                                                       No. CIV 03-815  JP/RHS

**ALFRED WALDREP, in his individual
capacity, and the CITY OF
ALBUQUERQUE,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiff Peggy Cadwell filed her complaint in state court against Defendants Alfred Waldrep and the City of Albuquerque.  Defendants removed the case to federal court.  On June 14, 2004, Defendants filed a Motion for Partial Summary Judgment (Doc. No. 42) seeking dismissal of Plaintiff's claims brought under 42 U.S.C. § 1983.  Having carefully considered the briefs, the relevant case law, and the admissible evidence in the record, the Court concludes that Defendants' Motion for Partial Summary Judgment should be granted.  Plaintiff's complaint (Doc. No. 1) contains claims against Defendants Alfred Waldrep ("Waldrep") and the City of Albuquerque ("City") under 42 U.S.C. § 1983 for violations of Plaintiff's Fourth and Fourteenth Amendment constitutional rights (Counts I, II, and III), as well as a claim against the City under 42 U.S.C. § 1983 for negligent supervision, retention, and training (Count IV).  Plaintiff has also asserted claims under New Mexico state law for assault, battery, and false imprisonment (Counts IV, V, and VI).  Defendants' motion for partial summary judgment does not address those claims.

**I.      FACTUAL BACKGROUND**

The Court will view the facts in the light most favorable to the Plaintiff.  See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1189 (10th Cir. 2000).  The following are the facts, established by admissible evidence, that most favor Plaintiff.

Plaintiff is employed as a Spanish language court interpreter with the Bernalillo County Metropolitan Court ("Metro Court") in Albuquerque, New Mexico.  At all times relevant to Plaintiff's claims, Defendant Waldrep was employed as a police officer with the Albuquerque Police Department ("APD").

At some point prior to June 2001, Waldrep was introduced to Plaintiff by a mutual friend and colleague, Grace Vigil, who worked as a clerk at Metro Court.  Dep. Cadwell, Def. Ex. B at 67.  At their initial meeting, Waldrep informed Plaintiff that he knew she drove a red Ford Explorer.  Dep. Cadwell, Pl. Ex. C at 71.  He knew the type of car that Plaintiff drove because he had observed Plaintiff driving her vehicle through the course of his duties as a traffic patrol officer.  Dep. Waldrep, Def. Ex. D at 39.  During their initial meeting, Waldrep also informed Plaintiff that he knew she lived on the west side of Albuquerque.  Dep. Cadwell, Pl. Ex. C at 72.

Following their initial meeting, Plaintiff and Waldrep encountered each other approximately ten more times in the Metropolitan Courthouse prior to June 27, 2001.  Dep. Waldrep, Def. Ex. A at 35.  On these occasions, Plaintiff and Waldrep exchanged greetings and small talk.  Dep. Cadwell, Def. Ex. B at 74; Pl. Ex. D at 41-42.  One particular time, Waldrep informed Plaintiff that he was a hunter.  Pl. Ex. D at 44.  Plaintiff responded by telling Waldrep that he was a "Bambi killer."  Dep. Cadwell, Pl.  Ex. C at 74; Dep. Waldrep, Pl. Ex. D at 44.  According to Plaintiff, Waldrep replied to her comment by stating that he liked "fresh, white

2

meat." Dep. Cadwell, Pl. Ex. C at 75. This comment disgusted Plaintiff, who immediately left Waldrep's presence. Dep. Cadwell, Pl. Ex. C at 75. Plaintiff also encountered Waldrep once while she was driving home on Unser Boulevard in Albuquerque. During that encounter, Waldrep pulled alongside Plaintiff's car in a police cruiser and used the vehicle's public address system to make an indecipherable comment to Plaintiff. Dep. Cadwell, Pl. Ex. C at 76-77.

On June 27, 2001, Plaintiff reported for work to Judge Sandra Clinton's courtroom in the Metropolitan Courthouse. Dep. Cadwell, Pl. Ex. C at 80. Waldrep was seated at counsel's table in the courtroom, along with other law enforcement personnel and attorneys. Dep. Cadwell, Pl. Ex. C at 86. Plaintiff stood at the front of the courtroom waiting to perform her duties as a court interpreter. Dep. Cadwell, Pl. Ex. C at 87. While Plaintiff was standing at the front of the courtroom, Waldrep gestured to Plaintiff in order to get her attention. Dep. Cadwell, Pl. Ex. C at 87; Ex. D at 19. Plaintiff ignored Waldrep. Waldrep next motioned for Plaintiff to approach him, to which she responded "No." Dep. Cadwell, Pl. Ex. C at 87; Ex. D at 20. Waldrep then got up from his chair and approached Plaintiff. Dep. Cadwell, Pl. Ex. C at 87; Ex. D at 21. Waldrep leaned toward Plaintiff, which caused her to back up against the wall of the courtroom. Dep. Cadwell, Pl. Ex. C at 87; Ex. D at 21. Waldrep then placed his right arm across Plaintiff's collarbone or upper chest, leaned his face toward her so that his mouth brushed against her ear, and proceeded to breathe and laugh into Plaintiff's ear. Dep. Cadwell, Pl. Ex. C at 88-91; Ex. D at 21. After several seconds, Plaintiff pushed away Waldrep, who is much larger and heavier than she is, and told him to stay away. Dep. Cadwell, Pl. Ex. C at 91-92. Waldrep subsequently left the courtroom. Dep. Cadwell, Pl. Ex. C at 93. A witness, Angie Derden, who was a clerk in Judge Clinton's courtroom on June 27, 2001, observed that Waldrep got "very close" to Plaintiff,

and that Waldrep pressed up against Plaintiff and backed her up against the wall.  Dep. Martinez, Pl. Ex. E at 8, 12.

Plaintiff reported Waldrep's conduct to his supervisors, and Waldrep received a two-day suspension for his behavior.  Pl. Ex. A.  Waldrep appealed his suspension to an *ad hoc* committee, which upheld the suspension on the ground that Waldrep's conduct violated the APD Standard Operating Procedures ("SOP's") regarding harassment.  Dep. Boyer, Pl. Ex. F at 10-11; Ex. G.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings.  Bacchus, 939 F.2d at 891.  To withstand a motion for summary judgment, the non-movant must make specific reference to admissible evidence in the record.  See Gross v. Burggraf Constr. Co.,

53 F.3d 1531, 1546 (10th Cir. 1995).  Unsubstantiated allegations, no matter how true they might be, cannot be considered.  See id.

## III. DISCUSSION

Plaintiff has asserted claims for violations of her constitutional rights under 42 U.S.C. § 1983, alleging that prior to June of 2001, Waldrep, acting in the course and scope of his employment as a police officer, targeted Plaintiff because of her gender by making inappropriate and sexual comments to her while in his police uniform, and by using police equipment, specifically a public address system in a police car, to communicate with and harass Plaintiff.  See Pretrial Or. (Doc. No. 77) at 4.   Plaintiff further contends that on June 27, 2001, Waldrep, again acting in the course and scope of his employment as a police officer, aggressively taunted Plaintiff in a sexual manner, backed Plaintiff against a wall with the weight of his body, and breathed and laughed into her ear.  Pretrial Or at 5.  Defendants move for summary judgment on Plaintiff's claims brought under 42 U.S.C. § 1983, asserting that 1) Waldrep is entitled to qualified immunity, and 2) Plaintiff has failed to prove municipal liability against the City under § 1983.  Def. Mem. (Doc. No. 43) at 4-8.

### A. Qualified Immunity

Under the qualified immunity doctrine, government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Woodward v. City of Worland, 977 F.2d 1392, 1396 (10th Cir. 1992) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force,'" and "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." See Saucier v. Katz, 533 U.S. 194, 206 (2001). The framework for analyzing a claim of qualified immunity is as follows: "Once a defendant pleads qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right, and (2) demonstrating that the right was clearly established at the time of the conduct at issue." Baptiste v. J.C. Penny Co., 147 F.3d 1252, 1255 (10th Cir. 1998); see also County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998). "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." See Nelson v. McMullen, 207 F.3d 1202, 1206 (10th Cir. 2000.) In order to meet this burden, "the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated that right with specificity." Baptiste, 147 F.3d at 1255. This is a heavy burden for the plaintiff. See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). If, and only if, the plaintiff establishes both elements of the qualified immunity test does a defendant then bear the traditional burden of showing "'that there are no genuine issues of material fact and that he or

she is entitled to judgment as a matter of law.'"  See Nelson, 207 F.3d at 1206 (quoting Albright v. Rodriguez, 51 F.3d 1531, 1535).

> 1. Plaintiff has Failed to Allege a Violation of the Equal Protection Clause of the Fourteenth Amendment for Sexual Harassment

Plaintiff argues that Waldrep's conduct constituted sexual harassment in violation of her right to equal protection under the Fourteenth Amendment.  In the Tenth Circuit, sexual harassment is actionable under 42 U.S.C. § 1983 as a violation of the Equal Protection Clause when committed by a state actor who abused his authority over the plaintiff for the purpose of his own sexual gratification.  See Maestas v. Lujan, 351 F.3d 1001, 1009 (10th Cir. 2003); Sh.A. v. Tucumcari Mun. Schs., No. Civ. 00-727 JP, slip op. at 2-3 (D.N.M. Mar. 21, 2002), aff'd 321 F.3d 1285, 1288 (10th Cir. 2003).  In order for an incident of sexual harassment to rise to the level of an equal protection violation under § 1983, it is necessary for the plaintiff to allege that the defendant exercised governmental authority over the plaintiff at the time of the incident.  See Noland v. McAdoo, 39 F.3d 269, 271 (10th Cir.1994).  Absent evidence that the defendant exercised governmental authority over the plaintiff, the defendant's conduct merely would amount to a private act of sexual harassment that is not actionable under § 1983.  See Whitney v. New Mexico, 113 F.3d 1170, 1174 (10th Cir. 1997); David v. City and County of Denver, 101 F.3d 1344, 1354 (10th Cir. 1997).

Several recent Tenth Circuit decisions have addressed whether a plaintiff has alleged sufficient facts to establish a § 1983 claim for sexual harassment.  In Johnson v. Martin, 195 F.3d 1208, 1217 (10th Cir. 1999), the plaintiffs alleged that the defendant, who was the former director of the city building department, had demanded sexual favors in return for granting permit

7

applications and favorable determinations of the plaintiffs' compliance with municipal codes. The court in <u>Johnson</u> reasoned that the defendant, as a building inspector, exercised state authority in reviewing the plaintiffs' applications for permits and assessing the plaintiffs' compliance with municipal codes. <u>Id.</u> at 1218. Similarly, in <u>Whitney</u>, the court found that the defendant, who was a state employee in charge of administering licenses for the operation of day care facilities, had exercised state authority over the plaintiff because at the time of the alleged incident of sexual harassment, the defendant was reviewing whether to grant the plaintiff a day care facility license. <u>See</u> <u>Whitney</u>, 113 F.3d at 1174.

By contrast, in <u>Noland v. McAdoo</u>, <u>supra</u>, the court found that the plaintiff failed to allege that the defendant, who was plaintiff's co-worker in the county assessor's office, exercised state authority over her at the time of the alleged sexual harassment. 39 F.3d 269, 271 (10th Cir. 1994). The court in <u>Noland</u> determined that the defendant's position as the plaintiff's co-worker did not vest the defendant with any supervisory or other authority over the plaintiff, and accordingly, that the plaintiff's claim of sexual harassment against the defendant was not actionable under § 1983. <u>Id.</u> Similarly, in <u>Woodward v. City of Worland</u>, <u>supra</u>, the court concluded that the plaintiffs, who were police communication dispatchers, had failed to show that the defendant law enforcement officers exercised state authority over the plaintiffs, because the defendants did not have supervisory authority or control over the plaintiffs at the time of the alleged incidents of sexual harassment.

Here, Plaintiff has not presented any evidence showing that Waldrep exercised state authority over her at the time that the alleged incidents of sexual harassment took place. Unlike the defendants in <u>Johnson</u> and <u>Whitney</u>, Waldrep did not use his government position to carry out

the alleged acts of sexual harassment against Plaintiff. Although Waldrep was in uniform and on duty at the time of the alleged incidents of sexual harassment, there is no evidence that Waldrep's actions were related to his performance as a police officer. See Haines v. Fisher, 82 F.3d 1503, 1508 (10th Cir. 1996) (finding that actions of uniformed, on-duty police officers in accomplishing a prank were unrelated to their duties as police officers, and therefore were private acts that were not actionable under § 1983); Woodward, 977 F.2d at 1401 (mere fact that defendants were state employees and that incidents occurred during working hours not enough to show that defendants exerted state authority over plaintiff). Although Plaintiff alleges that on one occasion Waldrep used the public address system of a police vehicle to harass her, this incident did not occur under circumstances in which Waldrep exercised police authority over Plaintiff, such as during a traffic stop or an arrest. Compare Johnson, 195 F.3d at 1218 (noting that police officers exercise governmental authority over motorists during traffic stops). The Court concludes that, at most, Waldrep's alleged actions constitute private acts of sexual harassment, which are not actionable under § 1983. See Woodward, 977 F.2d at 1401. Accordingly, Plaintiff has failed to allege an equal protection violation under § 1983, and Waldrep therefore is entitled to qualified immunity with respect to this claim.

    2.    <u>Plaintiff has Not Presented Evidence of a Violation of her Fourth Amendment Rights to be Free from Unreasonable Seizure and has Not Alleged a Fourth Amendment Violation Based on Use of Excessive Force</u>

Plaintiff further contends that Waldrep's conduct in the courtroom on June 27, 2001 violated of her Fourth Amendment rights to be free from unreasonable seizure and excessive force. It is well-settled that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable

9

person would have believed that he was not free to leave." See United States v. Mendenhall, 446 U.S. 544, 554 (1980). Courts consider the totality of the circumstances to determine if a seizure occurred, including "the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects . . . ; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed space; and absence of other members of the public." See United States v. Abdenbi, 361 F.3d 1282, 1291 (10th Cir. 2004). In order for police action to be deemed a seizure, a reasonable person must think he or she is unable to decline the officer's requests. See Petersen v. Farnsworth, 371 F.3d 1219, 1222 (10th Cir. 2004).

Applying the Tenth Circuit's analysis set forth in Abdenbi, the Court concludes that the evidence, considered in a light most favorable to the Plaintiff, does not support a finding that Waldrep "seized" Plaintiff during the alleged incident of sexual harassment on June 27, 2001. During this incident, Waldrep was not accompanied by other officers, nor was he brandishing a weapon, nor did his encounter with Plaintiff occur in a nonpublic place in the absence of other members of the public. See Abdenbi, 361 F.3d at 1291. Rather, the evidence shows that Waldrep approached Plaintiff in a crowded courtroom for purposes that were unrelated to his duties as a police officer. Although Plaintiff alleges that Waldrep physically touched Plaintiff during this encounter by placing his arm across her upper chest, leaning toward her and brushing his mouth against her ear, this physical contact would not have caused a reasonable person to believe that she was unable to terminate the encounter. It is undisputed that Plaintiff was, in fact, able to quickly terminate her encounter with Waldrep. Plaintiff states that she immediately pushed

Waldrep away and told him to stay away from her.  Plf. Mem. (Doc. No. 59) Ex. C at 91.  Accordingly, the Court concludes that Plaintiff has not presented evidence showing that Waldrep violated her Fourth Amendment right to be free from unreasonable seizure.

Furthermore, Plaintiff has failed to adequately allege a violation of her Fourth Amendment right to be free from excessive force.  The Fourth Amendment protects against excessive force arising out of traditional on-duty police conduct such as "an arrest, investigatory stop, or other 'seizure' of [a] person."  See Graham v. Connor, 490 U.S. 386, 388 (1989).  Plaintiff has not alleged that Waldrep was conducting an investigatory stop, arrest or other police activity covered by the Fourth Amendment.  Hence, Plaintiff has not alleged a violation of her right to be free from the use of excessive force.

Defendant Waldrep is entitled to qualified immunity on Plaintiff's § 1983 claims of Fourth Amendment violations.

### B. Municipal Liability

In order to establish municipal liability for negligent supervision, retention and training, Plaintiff must demonstrate that the municipal actions constitute deliberate indifference.  See Board of County Commrs v. Brown, 520 U.S. 397 (1997).  If the plaintiff cannot show that the state employee's actions amounted to a constitutional violation, then the municipality cannot be held liable to the plaintiff under § 1983 for the state employee's actions.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Trigalet v. City of Tulsa, 239 F.3d 1150, 1151 (10th Cir. 2001) (a city cannot be held liable for arbitrary or conscious-shocking action if there are no unconstitutional acts by an individual officer).  As discussed above, Plaintiff has not shown that Waldrep's actions amounted to a violation of her constitutional rights under the Fourth or

Fourteenth Amendments. The City, therefore, cannot be liable to Plaintiff under § 1983 for Waldrep's actions and the City is entitled to summary judgment.

IT IS ORDERED that Defendants' Motion for Partial Summary Judgment (Doc. No. 42) is GRANTED and Plaintiff's § 1983 claims will be dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE